## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

FRANCIS WARREN,          )
                                 )
          Plaintiff,      )
                                 )
vs.                        )     **Case No. 08-CV-319-TLW**
                                 )
MICHAEL J. ASTRUE,       )
Commissioner of Social Security,   )
                                 )
          Defendant.    )

### ORDER AND OPINION

Plaintiff Francis Warren seeks judicial review of a decision of the Commissioner of the Social Security Administration denying her disability benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 423.  In accordance with 28 U.S.C. § 636 (c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1]  [Dkt. # 9].

### Background

Plaintiff was born on December 16, 1955 and was 51 years old on the date of the hearing before the Administrative Law Judge ("ALJ").  [R.89, 29].  Plaintiff completed high school and attended Tri-County Technical School for clerical training and Career Point for data entry and administrative assistance training. [R. 30, 233].  Plaintiff is married to Charlie Warren. [R. 130].  She and her husband reside with her son and daughter-in-law. [R. 30].  Plaintiff began working in the clerical field at age 16. [R.231].  From  1985 to 1995 she worked in banking and from 1996 to

---

[1]  Plaintiff's application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge Lance McClain was held on July 13, 2007. [R.24].  By decision dated August 30, 2007, the ALJ entered the findings that are the subject of this appeal. [R. 13].  The Appeals Council denied plaintiff's request for review on April 25, 2008.  [R. 3].  The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

2005 she worked for MCI.  [R. 109].  On April 19, 2003, plaintiff was severely injured during a tornado.  She and her husband were inside their modular home when it was lifted in the air 150 feet and came apart.  She was thrown 350 feet, landing on her face in a creek bank.  [R. 131].  She sustained multiple facial fractures and breaks in her jaw.  Eight plastic surgeries were performed to reconstruct her face.  [R. 131].  She also sustained four broken ribs, four cracked ribs, a punctured lung, displaced collarbone and injury to her right shoulder and lower back.  [R. 131].  Plaintiff has metal plates in her face and forehead, and a prosthetic right cheek and nose.  [R. 180].  The injuries to her face and the reconstructive surgeries caused an abnormal bite making it difficult to chew.  [R. 199].  The vision in both her eyes is limited to 20/70.  She can not wear eye glasses because her face is asymmetrical.  She is unable to wear contact lenses for extended periods because her left eye swells and her right eye protrudes and is watery.  [R. 237, 277].  Her ability to hear is diminished.  [R.237].  She is unable to smile because she has partial paralysis of the facial muscles and nerves.  Her sinus passages are uneven with the left being markedly more protuberant.  She has loss of function of the right arm, chronic low back pain, and marked nasal obstruction.  [R. 238].  Plaintiff has been diagnosed with chronic post-traumatic stress disorder and major depression.  [R. 234].  Plaintiff claims to have constant pain in her face, right shoulder blade, collarbone and lower back.  [R. 131].  Following the accident in 2003, plaintiff missed three months of work.  [R. 31].  A co-employee worked closely with her for six months while she relearned office procedures.  [R. 32].  Plaintiff used seven years of cumulative sick leave to take off work approximately 2 to 5 days a month.  On April 10, 2005, she stopped working and/or was terminated because of poor attendance and poor health.  [R. 131].  In her application, plaintiff claims to have been disabled since April 10, 2005 due to headaches, pain in her right shoulder blade, collarbone, lumbar spine and jaw.  [R. 89].

She claims to have panic attacks during storms, anxiety around people, memory loss and problems concentrating. [R. 58].

In assessing plaintiff's qualification for disability benefits, the ALJ found at step one that plaintiff has not engaged in any substantial gainful activity since April 10, 2005, the alleged onset date. [R. 15].

At step two, the ALJ determined plaintiff's severe impairment to be post multiple facial fractures with repair, resultant visual impairment and degenerative disc disease. [R. 15]. The ALJ discussed plaintiff's claim of post-traumatic stress disorder and mild depression. He found that her medical records did not support the severity of her claimed mental impairment and determined that her alleged post-traumatic stress disorder and depression were mild and had a minimal effect on her ability to perform work-related activities. [R. 16]. In so finding, the ALJ rejected the assessment of plaintiff's treating physician and adopted the mental RFC performed by the agency expert Michael Morgan Ph.D., and determined plaintiff to have mild restriction in daily activities, social functioning, concentration, persistence or pace and no episodes of mental decompensation. [R. 16, 235].

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Specific emphasis was given to Listing 1.04 (disorders of the spine) and Listing 2.03 (contraction of peripheral visual fields). As to her spinal disorder, the ALJ found no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. [R. 16].

The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and /or walk for at least 6 hours in an 8-hour workday, sit for at least 6 hours in an 8-hour workday, avoid

working above shoulder level, and no work that requires good peripheral vision. [R. 16].

At step four, the ALJ found plaintiff capable of performing her past relevant work as an administrative assistant and customer service representative because her work did not require the performance of work-related activities precluded by plaintiff's RFC. [R. 19]. The ALJ consulted a vocational expert to establish that plaintiff's past work was skilled, sedentary and did not require above shoulder level activity or good peripheral vision. Thus, the ALJ concluded that plaintiff was not disabled. This finding was made at step four of the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[2]

## Issues Raised

On appeal plaintiff raises three issues of error:

First:      The ALJ committed legal error because he failed to properly develop the record related to plaintiff's headaches.

Second:     The ALJ erred by ignoring or inaccurately describing most of the probative medical evidence related to plaintiff's headaches and as a result his RFC findings were not based on substantial evidence.

Third:      The ALJ's credibility analysis was improper and his resulting credibility finding was not based on substantial evidence.

## Discussion

In social security cases, plaintiff bears the burden of establishing a prima facie case of disability at steps one through four of the five step evaluation. Nielson v. Sullivan, 992 F.2d 1118,

---

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

1120 (10th Cir. 1993). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of her impairment during the time of her alleged disability. 20 C.F.R. § 404.1512(b). Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.§ 423 (d)(3). The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a).

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991). Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. Hamilton v. Secretary of Health & Human Services, 961 F.2d

1495 (10th Cir. 1992).

As to her first issue, plaintiff argues the ALJ did not fully develop the record because he failed to order a consultative examination to evaluate plaintiff's claim that her headaches are disabling. Plaintiff premises this claim on Dr. Charles Holland's recommendation that plaintiff should consult a specialist to address the damage to her right eye and jaw bone.

As to her second issue, plaintiff claims the ALJ's discussion of plaintiff's headaches was incomplete and improper because it ignored a large amount of probative medical evidence related to her headaches. She claims the ALJ did not provide a reason for rejecting medical evidence supporting her claim and the evidence he did rely on was insubstantial.

As to her third issue, plaintiff claims the ALJ improperly relied on evidence prior to the relevant time period to support his finding that plaintiff's physical impairments and allegations of pain were not credible, in particular, that he failed to properly evaluate her allegation of pain.

The Court finds that the record in this case was sufficiently developed for the ALJ to properly determine plaintiff's disability claim. Thus, the Court denies plaintiff's first allegation of error. However, the Court agrees with plaintiff's two remaining issues. Specifically, the Court finds that that the ALJ failed to consider the effect plaintiff's headaches have on her ability to work on a consistent basis; failed to consider the totality of evidence supporting plaintiff's claim that her headaches, in combination with her other physical and mental impairments, restrict her ability to work on a daily basis; and failed in his determination that plaintiff's allegations of disabling pain is not supported by substantial evidence.

At the hearing, plaintiff testified why she frequently was absent from work after she returned following her accident in 2003.

6

Q.      Were you missing work during that period of time?

A.      Yes.  I panic when there's storms.  My shoulder blade hurts from – I had computer work, so my shoulder blade hurts, my collar bone hurts, I get severe headaches.  Just could not concentrate, had a hard time remembering anything that I did previously.

[R. 32].  In reference to headache pain, plaintiff testified:

Q.      How much work do you think you missed – a month?

A.      Anywhere from two to three days a month.  Sometimes more depending on just, I guess how bad I hurt.

Q.      So what bothers you the most now?

A.      I have severe headaches.  Really hurts.

Q.      How often have you had those?

A.      I have them every day.  Some days are worse than others.  Like this whole week I've had a really bad one.  Some of them made me sick to my stomach.

[R. 33].  As will be discussed below, the ALJ erroneously found that the first mention of headaches was on February 7, 2006, and that there was no further mention of headaches until the consultative examination on May 18, 2006.  He also erroneously found that plaintiff was not prescribed medication for headaches until June 2007.[3]  He found that her headaches "could be related to TMJ or her sinuses" and that her CT scan indicated further surgical correction was recommended.  [R. 18, 282].  The ALJ concluded by acknowledging that she suffered severe injuries to her face and "undoubtedly" had some pain.  "However, an individual does not have to be entirely pain free in order to perform substantial gainful activity."  [R. 19].

The record does not support the ALJ's conclusion.  The Court finds that the ALJ's

_____

[3]  The record shows that on August 30, 2006, plaintiff was prescribed Maxalt to be taken at the first sign of a migraine headache. [R. 287].

7

determination that plaintiff can return to her past relevant work is not supported by substantial evidence.  The ALJ erred in his finding that the record contained limited references to plaintiff's complaints of and treatment for severe headaches and in his failure to include her headache pain in his determination of plaintiff's RFC. The record is replete with medical evidence of not only headache pain, but evidence of disabling pain over most of plaintiff's body.

The records shows that on October 3, 2005, plaintiff's "chief complaint" included left heel pain, back pain persistent since accident, and headaches. [R. 214].  On November 3, 2005, plaintiff complained of and was treated for chronic back pain.  [R. 213].  On January 3, 2006, plaintiff complained of back pain, right shoulder pain, headaches and emotional problems.  [R. 212].  On February 7, 2006, plaintiff was treated for "general aching, headaches" and on March 22, 2006 she was treated for "lethargy and aching."  [R.223].  On February 14, 2006, plaintiff complained that she was waking with "bifrontal headaches"and pain in her right upper quadrant.  [R. 267].

On March 21, 2006 plaintiff's treating physician, John Smithson, M.D., provided his medical opinion of plaintiff's ability to work to the Oklahoma State Regents for Higher Education in consideration of discharging plaintiff's student loans.  Dr. Smithson opined that plaintiff has "total and permanent disability" and is unable to work because she "suffers from headaches, nervousness and can't be around people. . .[her] conditions appear to be chronic and have worsened as time goes on."  [R. 96].  On May 4, 2006, during an agency mental health evaluation, plaintiff's "chief complaints" were body aches, headaches, hearing and vision loss, and right shoulder pain with loss of full function.  [R. 231].  On May 18, 2006, during an agency physical examination, Jerry Patton, D.O. opined that plaintiff's medical impairments included decreased vision, loss of function of the right arm, chronic back pain, some loss of hearing, headaches and marked nasal obstruction.  [R.

238].  On May 25, 2006, Luther Woodcock, M.D. conducted an agency RFC assessment which was adopted in substantial part in the decision rendered by the ALJ.  However, included in Dr. Woodcock's assessment and absent from the ALJ's assessment was a caveat that "[p]ain is limiting factor in this RFC."  [R. 258].  On May 31, 2006, plaintiff was treated for persistent abdominal pain, left foot pain, rebound headaches, acid reflex, sleep disturbance and constipation.  [R. 266].  On July 25, 2006, plaintiff was treated for frequent and persistent headaches which remain unchanged.  [R. 265].  On August 30, 2006, plaintiff was treated for sleep disturbance, migraine headaches, tension headaches, and sinus headaches.  [R. 287].

On November, 29, 2006, Dr. Smithson opined that it would be nearly impossible for plaintiff to tolerate gainful employment because of the physical injuries and emotional trauma from the accident.  [R. 275].  On December 13, 2006, plaintiff was treated for "more frequent headaches," high cholesterol, occluded right nasal, sleep disturbance and constipation.  [R. 286].  On December 17, 2007, Dr. Smithson summarized plaintiff's complaints to include:

> (1) facial swelling (2) distorted vision (3) pain in her legs with prolonged standing or activity (4) frequent and severe headaches (5) back pain (6) limited abduction of the right upper extremity relating to a poorly healed clavicle.  She has also acquired a stress related disorder relating to stormy weather.
>
> It is my opion [sic] that there is little hope she will ever be able to function adequately in the workplace.

[R. 331].  On February 6, 2007, plaintiff's treating physician Charles Holland, Jr. M.D. entered the following notation in plaintiff's medical chart:

> Her chief complaint is headache and facial pain at this point that has been nonstop since the injury.  She really hasn't had a lot of help or a lot of improvement, nothing seems to help.  She has not been back to her surgeon in a while.  Basically, she has a daily headache that runs a scale of 4 or 5 and she knows she needs another operation to realign or readjust her bite and her occlusion because apparently she had

what sounds like LeFort's III fracture that ended up with multiple plates and surgeries and she still has some occlusion issues that are going to be evaluated and may need adjustment surgically.

[R. 309]. On February 9, 2007, Dr. Smithson completed a functional assessment questionnaire and again stated plaintiff would have difficulty working a regular full time job because of chronic pain and disability. [R. 274]. He diagnosed her with traumatic arthritis; symptoms including generalized muscle and joint pain, headaches and decreased peripheral vision; and chronic pain which is severe at times in the chest, back and head. [R. 270]. The ALJ failed to reference any medical evidence which would discredit the opinion of plaintiff's treating physician. The objective medical evidence supports Dr. Smithson's opinion that her injuries contribute to her having chronic pain. On March 21, 2007, Dr. Holland analyzed plaintiff's CAT scan.

Her CAT scan reveals osteomeatal obstruction, at least on my evaluation, bilaterally. She has some scarring in the maxillary sinus. She has a protuberant, slightly proptotic right eye. She has a large implant over the zygoma on the left side with plates and screws throughout. She has an adhesive in the right nostril that scars from the septum to the inferior turbinate on the right side which causes the congestion and holding of mucus, I think, in her nose that gives her some problem. To me it looked purulent and somewhat infected, so I cultured it.

She is also complaining of watery right eye and the fact that the eye runs and drips all the time, even though she doesn't seem to have allergies, hayfever or congestion. She has been suggested to have mandibular advancement or maxillary advancement surgeries, but at this point the etiology of her headaches is still somewhat unclear.

[R. 277]. On March 15, 2007, plaintiff was treated for low back pain, back stiffness, chronic sinuosities, gastroesophageal reflex and "unchanged" headaches, frontal and behind the eyes. [R. 285]. On June 21, 2007, plaintiff was treated for headaches making her nauseated, chronic low back pain, jaw pain, post-traumatic distress and gastroesophageal reflux. [R. 284]. On September 27, 2007, plaintiff complained of worse headaches, chronic back pain and elevated liver enzymes. [R.

332].

During the relevant time period, plaintiff's physicians prescribed a variety of pain and anti-inflammatory medications, such as Advil and Ibuprofen (headaches) [R. 265, 266, 317, 318]; Dexamethasone (a steroid treatment for  pain and arthritis) [R. 267]; Naproxen (foot pain and arthritis) [R. 266, 288, 320]; Depo medrol (pain and inflammation) [R. 267]; Maxalt (migraines) [R. 284, 287, 316]; Tramadol (narcotic treatment for severe pain); Excedrin Tension (headaches) [R. 287, 319]; and Toradol (severe headaches) [R. 316].  [See also R.137, 162, for additional listings of prescription medications.]

The Court finds that plaintiff's medical records clearly establish that she has received on-going medical treatment for arthritis, back pain, shoulder pain, foot pain and severe headaches.  The ALJ made minimal reference to plaintiff's allegation of pain even though the record is consumed with evidence to substantiate her claim.  The ALJ's general reason for rejecting all plaintiff's subjective complaints pertained to (1) notations by her plastic surgeon that "she was doing very well and was happy with how she looked"; (2) her nasal prosthesis looked good and she was having no problems; (3) her expressed interest in breast augmentation surgery; (3) lack of evidence supporting headache pain; and (4) her purportedly inconsistent statements about her daily housework.  [R. 18-19].[4]

"An ALJ is required to give controlling weight to a treating physician's well-supported

---

[4]  The ALJ relied on a purported discrepancy in statements made by plaintiff at the hearing and in her filings with the Commission.  At the hearing plaintiff testified:  "My daughter comes every other day and then my son and his wife lives there so they help with the housework and cooking." [R. 39].  In documents filed with the Commissioner, plaintiff stated:  "Husband helps and daughter comes over to help" [R. 103] and "she performs all of the necessary household chores including shopping and cooking, but her daughter helps with cleaning." [R. 232].  The Court finds that these statements are substantially similar.  The ALJ's determination to the contrary, is erroneous.

11

opinion, so long as it is not inconsistent with other substantial evidence in the record." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). In this instance, the ALJ did not give controlling weight to Dr. Smithson's opinion because (1) he had not treated her from September 2002 to April 2004, (2) he performed no diagnostic tests and (3) the record made no mention that plaintiff was treatment for a mental problem.[5] [R. 19].

The Tenth Circuit instructs that "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Id. The Court finds that the ALJ erred in basing his finding on the absence of treatment records from September 2002 to April 2004, because plaintiff's alleged disability onset date is April 10, 2005. The ALJ's finding that Dr. Smithson's opinion is contrary to the evidence is also erroneous. As shown above, plaintiff's medical records, from November 3, 2005 to September 27, 2007, substantiate plaintiff's allegation of headache pain. [R. 214, 332]. The record shows regular medical appointments and prescriptions for the treatment of other bodily pain and other mental and physical impairments. In addition, plaintiff's medical records detail the extensive injury to plaintiff's face and repeated reconstructive surgeries. Moreover, the CAT scan performed on February 28, 2007, was an effort by her physician to determine the cause of plaintiff's frequent headaches. [R. 282]. The Court finds that the ALJ erred in failing to find that plaintiff met her burden of proof at step 4 of the 5 step evaluation.

Plaintiff's counsel tendered a hypothetical question to the vocational expert which

---

[5] The record shows that plaintiff was prescribed Prozac for the treatment of depression and Prazosin for treatment of nightmares in 2007. [R. 165]. Plaintiff has also been diagnosed with chronic posttraumatic stress disorder and major depression disorder in 2006. [R. 234].

12

encompassed the RFC assessment made by Dr. Smithson.  [R. 44, 302-306].  The vocational expert testified that, assuming those facts to be true, plaintiff would not be able to perform her past relevant work, and in addition, she would not be able to perform any competitive work.  [R. 43].

This case has been pending for nearly four years.  Based on the vocational expert's testimony that included the assessment of Dr. Smithson, the Court finds that there is sufficient evidence of record and, thus, no reason for this case to be remanded for additional administrative proceedings. Instead, the Court exercises its discretionary authority to remand the case for an immediate award of benefits.

From a review of the record as a whole, the Court finds that the decision rendered by the Commission denying plaintiff's claim for disability benefits is not supported by substantial evidence. The decision of the Commissioner finding plaintiff not disabled is hereby **REVERSED** and the case is **REMANDED** for an immediate award of benefits.

IT IS SO ORDERED this 16th day of October, 2009.

T. Lane Wilson
United States Magistrate Judge